Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3539 | **DATE** | 2/8/2002 |
| **CASE TITLE** | El-Uri vs. City of Chicago, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order granting in part and denying in part defendants' motion for partial summary judgment (27-1). Defendants' motion is granted as to counts IV and V and denied as to counts II and VI.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 4 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | FEB 11 2002 date docketed | |
| | Notified counsel by telephone. | | | 43 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 2/8/2002 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| MPJ | courtroom deputy's initials | 02 FEB -8 PM 4:48 Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **FARIED EL-URI**, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 00 C 3539 |
| **CITY OF CHICAGO**, a municipal corporation, **OFFICER BRENNAN**, individually and in his official capacity as a City of Chicago Police Officer, and **JOHN DOE**, | ) ) ) ) ) ) ) |
| Defendants. | ) |

DOCKETED
FEB 11 2002

## MEMORANDUM OPINION AND ORDER

Faried El-Uri accompanied two Chicago Police detectives to a police station to assist them in their inquiries concerning the accidental death of a friend. He says that at the station, one of the detectives, for no apparent reason, brutally punched, kicked, and beat him, rupturing his spleen, and then brought him home without attending to his medical needs. He sued under 42 U.S.C. § 1983 and several state tort laws. The defendants move for summary judgment on count II (deliberate indifference to serious medical needs under § 1983), count IV (willful and wanton conduct), count V (same), and count VI (negligence). I deny the motion in part and grant it in part.

I.

On May 3, 2000, Faried El-Uri of Chicago, Illinois, who is a methadone-dependent drug addict and an alcoholic, was drinking

heavily with his friend David Floyd. After passing out, Mr. El-Uri found Floyd unconscious or dead, and called the police and the paramedics, who determined that Floyd was indeed dead. The police questioned Mr. El-Uri on the scene, and he voluntarily accompanied Detectives Bernard Brennan and Robert Collins to the Area 5 Detective Division. He was held or stayed until May 4, when Detective Brennan walked into the interview room alone, found Mr. El-Uri asleep on the floor, and, he testified, kicked him in the feet to wake him up, punched him, causing him to fall to the floor, and while he was lying on the floor, kicked him in the stomach and side. Detective Brennan then left the room, returned, and told Mr. El-Uri that the investigation was over and he could go home. He says that Mr. El-Uri never told him anything was wrong, and seemed to be OK. However, Mr. El-Uri was taken to the hospital that day and treated for a ruptured spleen.

Mr. El-Uri testifies that Detective Brennan punched him in the head over the temple, then, when he covered his face, hit him on the right side of the head, knocking him off the bench, and kicked him in the ribs extremely hard; Mr. El-Uri screamed when he felt something "pop" in his body, and some sort of bile started coming out of his mouth. He started screaming, and Detectives Brennan and Collins left in a hurry. Mr. El-Uri had a hard time breathing as he got up, and was in pain. He walked very slowly to the bathroom. He had defecated in his pants because of the beating and had a hard

-2-

time cleaning up because of the pain. He left the bathroom walking slowly and having difficulty breathing with the two detectives a few paces behind. It took him about ten minutes to walk out of the police station. He says that he did not tell anyone that he needed medical attention because he was worried that someone might take him into the alley and shoot him if he said that he had been attacked by a police officer. Detectives Brennan and Collins drove Mr. El-Uri home, and on the short trip, Detective Brennan told him that he was making "weird noises" in the back seat. (Detective Brennan says that these were the sort of stomach noises associated with hunger.) On the trip, Mr. El-Uri was crying out in pain, especially when the car went over bumps. He had difficulty getting out of the police car, and in fact exited it screaming and bent over. A witness said that he "half-walked, half crawled" out the car. He went to the hospital shortly thereafter, where he was diagnosed with a ruptured spleen, and was in fact in danger of death. His spleen was removed.

## II.

Summary judgment is appropriate where the record and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp*, 165 F.3d 1087, 1090 (7th Cir. 1999); Fed. R. Civ. P. 56(c). I must construe all facts in the light most favorable to the non-moving party and draw all

reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

A.

I begin with the individual capacity claim against Detectives Brennan and Collins alleging deliberate indifference to serious medical needs. The due process clause of the Fourteenth Amendment prohibits punishment of pretrial detainees prior to a formal adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520, 535-39 (1979). Due process prohibits deliberate indifference to the serious medical needs of pretrial detainees. *Salazar v. City of Chicago*, 940 F.2d 233, 237-242 (7th Cir. 1991). To prevail on a § 1983 claim premised on this basis, a plaintiff must satisfy an objective and a subjective element, namely that: (1) he had an objectively serious injury or medical need, and was deprived of care; and (2) the official knew that the risk of injury was substantial but nevertheless failed to take reasonable measures to prevent the harm. *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001). An objectively serious injury or medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). For the subjective element, deliberate indifference, the plaintiff must show "that the official was aware of the risk and consciously disregarded it nonetheless."

*Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 840-42 (1994)). The defendant is liable only if the conduct was intentional or criminally reckless--even gross negligence is not enough. *Salazar*, 940 F.2d at 238.

Detective Brennan's conduct, as Mr. El-Uri describes it, satisfied this standard. Mr. El-Uri suffered injuries that any reasonable person would have recognized as requiring medical attention. If Mr. El-Uri's version of the story is true, Detective Brennan repeatedly beat and kicked a defenseless man, a drug addict and alcoholic, whom he knew had been up drinking heavily all night, hitting him in the head hard enough to knock him to the floor, and then actually kicked him when he was down. A reasonable person would know that, other things being equal, someone who had been beaten in the head hard enough to knock him to the floor and then kicked in the midriff would need medical attention, especially if, immediately afterwards, he was screaming in pain, throwing up bile, walking bent over and extremely slowly, as supported by the evidence appended to the defendants' summary judgment motion. As for the subjective element, Detective Brennan's intentional battery, described by the the plaintiff, was conduct that was "so dangerous that the defendant's knowledge of risk can be inferred." *Salazar*, 940 F.2d at 238 (citation omitted). If that were insufficient, it is more than adequately supplemented by Mr. El-Uri's testimony about screaming in pain, throwing up bile, walking

bent over and extremely slowly. He testified that Detective Brennan even remarked on the "weird noises" he was making in the back of the car. In the circumstances, a rational jury might well reject Detective Brennan's suggestion that this remark was occasioned by the growl of an empty stomach.

That Detective Brennan had knowledge of Mr. El-Uri's condition is supported by the evidence in the record. A rational jury might doubt Detective Brennan's claim that Mr. El-Uri "had no visible signs of injury when he left the police station" from which the detectives own knowledge of Mr. El-Uri's condition might be inferred. This case is unlike *Salazar*, where the plaintiff showed "no outward sign of injury" and his "vital signs were all normal." 940 F.2d at 235. Neither is it like *Quian v. Kautz*, 168 F.3d 949 (7th Cir. 1999), where a CAT scan was required to reveal that the plaintiff was suffering from a subdural hematoma. *Id.* at 953. In neither of those cases was there evidence that indicated that the officers inflicted brutal violence on the plaintiff so that any reasonable person would know that he needed medical attention, and then ignored the obvious, predictable, and virtually inevitable signs of injury that ensued: screaming, throwing up, hobbling, and moving slowly and bent over. In those cases, the defendants were not even present when the injuries were inflicted.

Detective Brennan argues that Mr. El-Uri "made no complaints of any injury." He says that while Mr. El-Uri was cleaning himself

up in the bathroom, he replied to Detective Brennan's inquiry as to whether he was OK by saying that he was "fine," and that he did not reply when asked whether he was OK while being driven to his home. Now, normally screaming in pain will do to register a complaint. Even if not, Mr. El-Uri's reluctance to discuss these tactics, carried out in a police station with the officer who, if his story is true, had just beaten him to the point of rupturing his spleen, is understandable. A reasonable jury could reject the claim that neither officer had actual knowledge of Mr. El-Uri's injuries.

Detective Collins did not himself directly participate in the beating that Mr. El-Uri says Detective Brennan inflicted on him, although Detective Collins testified that he could see Detective Brennan at all times during this "interview," and Detective Brennan says that Detective Collins was in "in close proximity" throughout. Moreover, he walked behind Mr. El-Uri after the beating, and then drove him home. Therefore, there is evidence that he knew the same things that Detective Brennan knew about Mr. El-Uri's condition, and a rational jury could conclude that he exhibited the same reckless disregard for Mr. El-Uri's health.

B.

The two detectives invoke qualified immunity as a defense. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In qualified immunity cases, I first consider whether, "taken in the light most favorable to the party asserting the injury, [] the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001). "The next, sequential step is to ask whether the right was clearly established." *Id.* Here, on the version of the facts that I must accept for the purposes of this motion, Mr. El-Uri's due process rights were plainly violated. The question is whether the right in question was clearly established. The inquiry focuses on the "objective legal reasonableness" of the action, not the state of mind of the officials in question. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

To show that a right was clearly established, a plaintiff may invoke a "closely analogous case" that has already established both the right at issue and its application to the factual situation at hand, see *McGrath v. Gillis*, 44 F.3d 567, 570 (7th Cir. 1995), or show that "the violation was so obvious that a reasonable person would necessarily have known about it." *Brokaw v. Mercer County*, 235 F.3d 1000, 1022 (7th Cir. 2000); *Erwin v. Daley,* 92 F.3d 521, 525 (7th Cir. 1996). Binding precedent is not necessary to clearly establish a right, *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir. 1988); in extreme cases, an analogous case might never arise

because "the existence of the right was so clear . . . that no one thought it worthwhile to litigate the issue." *Burgess v. Lowery*, 201 F.3d 942, 945 (7th Cir. 2000). "An easy or obvious case of deprivation that has no precedent does not mean that 'officials would be immune from damages liability because no previous case had found liability in those circumstances.'" *Brokaw*, 235 F.3d at 1022 (citing *K.H. Through Murphy v. Morgan*, 914 F.2d 846, 851 (7th Cir. 1990)).

This is an easy or obvious case. Any reasonable officer would know that if he beats and kicks a plaintiff to within an inch of his life, it gives rise to an inference that the victim of this attack is in need of medical attention. *See Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996) ("Beating a person in violation of the Constitution should impose on the assailant a duty of prompt attention to any medical need to which the beating might give rise, by analogy to the duty in ordinary tort law to provide assistance to a person whom one has injured."). If the officer, or his partner who observed the beating and its aftermath, then fails to provide the attention even after the victim screams in pain for an extended period, spits up fluids, and hobbles painfully, he shows deliberate indifference. The individual officers have no qualified immunity defense here.

C.

All defendants, including the individual officers and the City of Chicago, argue that they are entitled to summary judgment on counts IV and V because there is no independent tort of "willful and wanton conduct." *Ziarko v. Soo Line R. Co.*, 641 N.E.2d 402, 406 (Ill. 1994). Count IV, against Detective Brennan and the City, they say, is just a battery claim, equivalent to count III; count V, against the two detectives and the City for failure to provide medical treatment, is not a recognized tort in Illinois. They also move to dismiss count VI (negligence), because their conduct was immunized under the Illinois Tort Immunity Act, 745 ILCS 10/2-202 (A public employee is not liable for negligence "in the execution or enforcement of any law," but he is liable if his "act or omission constitutes willful and wanton conduct."), because they were executing and enforcing the laws in investigating the death of Mr. El-Uri's friend.

The point about count IV is correct. Nothing more than battery is described in the facts. Battery is an intentional tort, and "[w]illful and wanton conduct includes that which was performed intentionally." *Id.* I grant summary judgment on Count IV as redundant. Likewise with count V. The defendants are correct that "willful and wanton" conduct is an element of a cause of action, not a cause of action on its own. Count VI, however, stands. Negligence by law enforcement officials is actionable under the

"willful and wanton" statutory exception to the Illinois Tort Immunity Act. Because a rational jury could believe that the defendants' conduct was constitutionally reckless, "that is, so dangerous that the[ir] knowledge of risk can be inferred," *Salazar*, 940 F.2d at 238, the jury could accept the claim that the conduct willful and wanton, and so not immunized under the Illinois Tort Immunity Act. The detectives could be held liable for negligence under this theory.

### III.

I GRANT the defendant's motion for summary judgment on counts IV and V. I DENY their motions for summary judgment on counts II and VI.

ENTER ORDER:

**Elaine E. Bucklo**
United States District Judge

Dated: February 8, 2002